**Thomas BLACKBURN, Respondent,**

v.

**Robert HOLMES and Zelleta Holmes, Defendants,**

**Jessie Holmes, Appellant.**

**No. 46043.**

Supreme Court of Missouri, Division No. 2.

Nov. 10, 1958.

Dubail, Judge & Kilker, Charles R. Judge, St. Louis, for appellant.

Flynn, Parker & Badaracco, Joseph L. Badaracco, St. Louis, for respondent.

LEEDY, Judge.

Jessie Holmes appeals from an order of the Circuit Court of St. Louis County entered upon plaintiff's after-judgment motion ("to amend the record and for nunc pro tunc entry") in the case of "Thomas Blackburn, plaintiff v. Robert Holmes and Zelleta Holmes, his wife, defendants, No. 208,956," by which order, so appealed from, the default judgment in said cause which originally had been rendered against "Robert Holmes and Zelleta Holmes, his wife," was amended so as "to correct the erroneous name of defendant litigant Zelleta Holmes to read 'Jessie Holmes.'" She filed a motion to set aside and vacate the foregoing order, which motion the court overruled, and her notice of appeal also specifies the latter action as being an order from which she appeals.

Blackburn's action (filed June 20, 1955) is one to recover sums of money loaned defendants. In the caption of his petition defendants were designated as "Robert Holmes and Zelleta Holmes, his wife," and the body thereof so alleges. On June 29, 1955, writ of summons issued in those names, and the same was on July 27, 1955, returned non est. On August 3, 1955, alias summons issued directed to the same persons commanding them "to appear before the above-named court * * * within 30 days after service of this summons," to which summons the sheriff made return reading as follows (his signature omitted):

"I hereby certify that I have served the within summons in the County of St. Louis, State of Missouri, by delivering on the 8th day of August, 1955, a copy of the Summons and a copy of the Petition as furnished by the Clerk to Robert Holmes, defendant herein.

"I hereby certify that I have served the within summons in the County of St. Louis, State of Missouri, by leaving on the 8th day of August, 1955, a copy of the summons and a copy of the Petition as furnished by the Clerk for Zelleta Holmes defendant herein at the

respective dwelling place or usual place of abode of said defendant with some person of his or her family over the age of 15 years."

On October 7, 1955, the defendants not having appeared, judgment by default was entered against both "Robert Holmes and Zelleta Holmes, his wife," for the debt sued on. On the same day execution was issued on said judgment, and on January 9, 1956, the sheriff returned the same unsatisfied, making this recital: "No Goods, Chattels or Real Estate found in the County of St. Louis, Missouri, belonging to the within named defendant Robert Holmes, et al., whereon to levy this writ to make the judgment debt, interest and costs herein or any part thereof."

Thereafter, Blackburn, by motion under Sections 513.380, 513.385, RSMo 1949 and V.A.M.S., sought and obtained an order directing examination of the judgment debtors touching their ability and means to satisfy the judgment against them. The order required "Robert Holmes and Zelleta Holmes, his wife," to appear for such examination on February 10, 1956. Copies of such order for examination were placed in the hands of the sheriff, whose return shows he served the same on January 24, 1956, in St. Louis County in the manner following: "[B]y leaving a true copy of the same for the within named Robert Holmes, at his usual place of abode, with a member of his family over the age of 15 years," and "by delivering a true copy of the same to the within named Zelleta Holmes, as commanded."

Apparently thereafter it was discovered that there was no such person as Zelleta Holmes, because the transcript of the proceedings taken under the order for examination on February 10 opens thus:

"The Court: As I understand it, gentlemen, in this case there is no such person as Zelleta Holmes. Is that correct?

"Mr. Dubail. That is correct, your Honor."

A discussion then followed between court and counsel concerning the fact of this discovery and the effect thereof, so that the original purpose of the examination was not rigidly pursued, but, on the contrary, plaintiff's counsel stated, "I would like to get some information about this name situation." Whereupon, Robert Holmes was called by plaintiff's counsel and he testified to the following effect: That he lived at 1156 McArthur, South Kinloch Park, and that he had resided at that address with his wife and three children since March, 1955; that his wife's name was Jessie Holmes; that she was the only wife he had ever had; that she did not have the maiden name or nickname of Zelleta; that he had never heard the name Zelleta before, and that his wife was not known in the neighborhood as Zelleta. Plaintiff's counsel then went into the matter of the service of the alias summons upon the witness, and the following occurred:

"Q. Was it served on you personally, sir?

"Mr. Dubail: I submit the Sheriff's return would be the best evidence of that:

"Mr. Badaracco: If it is all right, I would like to know if that shows that. I have not had a chance to check that, your Honor.

"The Court: The best evidence would be the Sheriff's return. (Thereupon there was a discussion had off the record.)

"Q. (By Mr. Badaracco) Do you recall when you were served—I noticed from the court file you were served with a summons in this case August 8 and that someone named Zelleta Holmes, according to the Sheriff's return, was also served on August 8. Were you and your wife at home at the time of service in this matter? A. I were not there when the service was brought in.

"Q. You were not there? A. No.

"Q. He didn't hand it to you personally? A. No.

"Q. How did you get it? A. He left it with my wife.

"Q. In other words, with Jessie? A. That is right."

Other matters developed had to do with (1) the place of, and the nature of his employment, and (2) the home he was living in being the only property he owned; that he had moved there during the previous March, and that he and his wife Jessie had owned it ever since. The hearing was thereupon concluded with this remark by plaintiff's counsel:

"Mr. Badaracco: That is all I have at this time, your Honor. I just wanted to get a little information—

"Mr. Dubail: I have no questions.

"Mr. Badaracco:—to inform my client about, to see what we can do. Where we go from here, I don't know."

The cause was thereupon continued to March 23, 1956, and on the latter date "said cause was continued generally to be reset."

Thereafter, on September 28, 1956, plaintiff filed a motion asking that the judgment originally entered in the case "in favor of plaintiff and against 'Robert Holmes and Zelleta Holmes, his wife,' be amended and a nunc pro tunc entry made or other appropriate action by the Court be taken so as to cause said judgment in favor of plaintiff and against defendants, Mr. and Mrs. Robert Holmes, to read against 'Robert Holmes and Jessie Holmes, his wife', for the following reasons:

"1. Personal service in this cause was made on Robert Holmes.

"2. Personal service in this cause was made on Mrs. Holmes at the same time by the same deputy by leaving a copy of plaintiff's petition and a summons with defendant Robert Holmes at the home of defendants for her.

"3. Subsequent to entering said judgment, it was discovered that defendant Mrs. Holmes' name was 'Jessie' and not 'Zelleta'.

"4. This suit was filed by plaintiff against defendant Robert Holmes and his wife and the petition in this cause designated defendants as husband and wife residing in their home at McArthur near Monroe, Kinloch, Missouri.

"5. Service was actually effected on defendant Robert Holmes for himself and for the only wife he had at the time or since.

"6. Service was actually effected on the right parties, although the first name of Mrs. Holmes was wrong.

"Wherefore, Plaintiff prays for an amendment to the record in accord with the foregoing, to correct the erroneous name of defendant litigant Zelleta Holmes to read Jessie Holmes, and for such further orders as are necessary."

On October 8, 1956, notice was served upon "Dubail, Judge and Kilker * * * Attorney for Defendants" that said motion would be called up for hearing on October 26, 1956. The next entry in the transcript is that under date of November 20, 1956, which reads as follows:

"The Court finds that process was duly served on defendants, husband and wife, and being duly convinced that the name of defendant's wife is Jessie Holmes, vice 'Zelleta' Holmes and the record is corrected accordingly."

Thereafter, on November 29, 1956, Jessie Holmes filed her verified motion to set aside and vacate the foregoing order of November 20, alleging as grounds therefor:

"1. That there is no basis in law or in fact for the entry of the order aforesaid.

"2. That the entry of such order is against the law.

"3. That the entry of such order is unconstitutional in that it deprives this movant of her day in Court and deprives her of due process as made and provided for in the constitutions of the United States and of the State of Missouri.

"4. That there is no merit to Plaintiff's motion heretofore filed herein and that the Plaintiff is guilty of laches in failing to diligently prosecute any defect if any in that the same was known to the Plaintiff herein as early as February 10, 1956.

"5. That this movant had no knowledge or information of the pendency of this action until the service upon her of an examination of a judgment debtor on or about the 24th day of January, 1956, as verified by an affidavit by this movant attached hereto and made a part of this motion, and that she did not in fact receive or see summons in this action."

Her accompanying affidavit (omitting formal parts) reads as follows:

"1. That she is the wife of Robert Holmes, who was one of the defendants named in the certain suit styled Thomas Blackburn vs Robert Holmes and Zelleta Holmes No. 208956, division Number 5 of the Circuit Court of the County of St. Louis, Missouri.

"2. That the said Robert Holmes died on September 17, 1956.

"3. That this defendant had no knowledge of any kind or character of the institution of the aforesaid action and received no summons of the same and had no knowledge of the pendency of said action until the time of the service upon her in January 24, 1956, of the Examination of Judgment Debtor directed to Zelleta Holmes.

"4. That she has not had any opportunity to appear and be heard in this cause.

"5. That she has a meritorious defense to plaintiff's alleged action in that she had no knowledge of any kind or character of any monies borrowed, if any, by her said husband from the said Thomas Blackburn and that she has at no time had any conversation or dealings with the said Thomas Blackburn.

"6. That she has never been known by the name of Zelleta Holmes or by any name other than that of Jessie Holmes."

The next entry appearing in the transcript is the following: "And thereafter, to-wit, on the 20th day of December, 1956, the Court having duly considered motion of Jessie Holmes to set aside and vacate order of November 20, 1956, and being now fully advised in the premises, overrules said motion."

The appellant contends that the action of the court in amending the default judgment against "Zelleta" Holmes (based on abode service) to run against "Jessie" Holmes, denies to Jessie Holmes her constitutional right of due process, and is void. She argues that abode service being substituted or constructive service and not personal service, the misnomer is fatal and not constitutionally correctible so as to subject Jessie Holmes to the court's jurisdiction. On the other hand, respondent not contending the amendment may be sustained as a nunc pro tunc entry, takes the position that the amendment "was correct under the circumstances; Jessie Holmes, although misnamed 'Zelleta' Holmes, was properly served and process directed to her as Mrs. Holmes, the wife of Robert Holmes, gave her due notice of the suit against her."

■ It appears that the court did not hold a hearing—formal or informal—on plaintiff's motion for the order entered November 20, 1956, but that it acted solely on the basis of the sheriff's returns, the admitted fact that there was no such person as "Zelleta" Holmes, and the testimony of Robert Holmes (as hereinabove summarized) on his prior examination as a judgment debtor. It was never, at any time, admitted that Zelleta and Jessie were one and the same person. The plaintiff seeks to rely on the testimony of Robert Holmes to the effect that the sheriff did not serve him personally, but that his summons had been left with his wife, but this is contrary to the sheriff's return, and the latter is controlling. Moreover, if it should make any difference, and we think it does not, this discrepancy is explainable when it is borne in mind that the parties are elderly colored people and the sheriff's return of service on the order upon the judgment debtors to appear for examination shows that he personally served Zelleta and abode service was obtained as to Robert.

We have no doubt of the power of the court to correct its record if it had obtained jurisdiction over the person of Jessie Holmes before the judgment was entered, but this is not an instance where personal service has been obtained upon a defendant by the wrong name. Cases of that nature present no problem, as the cases attest. Such was the situation in Parry v. Woodson, 33 Mo. 347, where it was held that the plaintiff might amend his petition by correcting a mistake in the name of the defendant by striking out the name "Benjamin" and inserting in its place the name "Branham," the defendant having actually been served with process but under the wrong name. Similarly, in Harper v. Hudgings, Mo., 211 S.W. 63, one Loureva Burney was a necessary party. The record showed that Louisa Burney had been duly served with summons, and it was held that if "Louisa" were the same person as "Loureva," then the service upon her by either name was valid.

Plaintiff puts much emphasis upon Howard v. Brown, 197 Mo. 36, 95 S.W. 191, wherein an order of publication was to Henry T. Brown (whose real name was Henry P. P. Brown) along with all the cotenants of a tract of land. His name was placed in a group composed of the names of all the members of his family—his mother, sisters, their husbands, and his nephew. The opinion contains a general discussion of the subject of the use of a middle name or initial of a middle name and the effect of a misdescription of the defendant in the initial of the middle name. The opinion did not determine the validity of the publication, the ultimate holding being that, for want of specific objection, the appellant (the party misdescribed) was not entitled to have the sufficiency of the notice of publication considered, so that what was said in the respects just mentioned was not necessary to a decision, nor is it persuasive on our question.

■ Abode service under Section 506.150 (1), RSMo 1949 and V.A.M.S., while personal in the sense that it will support a judgment in an action in personam, is nevertheless substituted personal service, and the cases refer to and treat it as being substituted or constructive service. Feurt v. Caster, 174 Mo. 289, 73 S.W. 576; Laney v. Garbee, 105 Mo. 355, 16 S.W. 831; Rosenberger v. Gibson, 165 Mo. 16, 65 S.W. 237; Chamberlain v. Blodgett, 96 Mo. 482, 10 S.W. 44. In the latter case, this was said: "In the case of substituted service, or service by publication, no one is served who is not named, or, what amounts to the same thing, who is incorrectly named; while in case of personal service, the right party is actually served by delivery of the writ, though he is not correctly named therein."

■ We do not regard as sufficient to the validity of the service the circumstance that the summons to Zelleta made reference to her as the wife of Robert Holmes. As was said in Ohlmann v. Clarkson Sawmill Co., 222 Mo. 62, 120 S.W. 1155, 1156, 28

L.R.A.,N.S. 432: "When summons is actually served on the right individual by the wrong name, the error becomes immaterial, because he has notice of the suit, and may appear if he choose and plead a misnomer. But absent actual notice when the law for convenience substitutes a constructive notice, *the name of the individual defendant obviously becomes one of the essentials and of the very life of the notice.*" (Emphasis ours.)

We are of the opinion that the challenged abode service directed to Zelleta Holmes was not notice to Jessie Holmes under the facts here involved, and that the same was insufficient to confer jurisdiction over the person of Jessie. The order subjecting Jessie to the default judgment is, therefore, reversed and the cause remanded for such further action consistent with the views herein expressed as plaintiff's counsel may desire to take.

All concur.