**LAWRENCE–LEITER AND COMPANY, Plaintiff–Respondent,**

v.

**Vasant B. PATEL, Defendant,**

**and**

**Kanchan Patel, Defendant–Appellant.**

No. 17027.

Missouri Court of Appeals,
Southern District,
Division 1.

Jan. 25, 1991.

David P. Vandagriff, Monett, for defendant-appellant.

Matthew M. Mocherman, Cassville, for plaintiff-respondent.

CROW, Judge.

The snafu presented by this record is without parallel in any case we have come across. The legal issues arising from it can be fully appreciated only after a chronological account of the facts.

Plaintiff Lawrence–Leiter and Company is a "management consulting firm" in Kansas City. Defendant Vasant B. Patel ("Vasant") and his wife own and operate the Town House Motel in Cassville.

Prior to Christmas, 1988, Vasant telephoned plaintiff's office and talked with David Domsch,[1] a "vice president and director of research," about a feasibility study regarding expansion of the motel.

On January 23, 1989, Domsch went to Cassville and met Vasant at the motel. They spent "a couple of hours" together, during which they discussed the study and "drove around town and saw the competition." Vasant did not tell Domsch to commence the study at that time.

On January 27, 1989, Vasant phoned plaintiff's office and talked to Domsch. They discussed the study further, and Vasant said he "wanted to go ahead with the project."

---

**1.** The surname is spelled "Donsch" in the transcript, but appears as "Domsch" on two letters authored by him and received in evidence. We assume the latter spelling is correct.

Immediately after the conversation Domsch sent Vasant a letter describing what the study would include and stating the fee would be between $6,500 and $7,500, plus expenses. The letter was addressed:

"Mr. Patel
Owner
Town House Motel
...."

Domsch went to Cassville the evening of February 5, 1989, to commence the study. He remained there through February 9 gathering information, viewing other motels in the area, and interviewing sundry people. He also talked with Vasant several times.

Domsch completed the study February 23, 1989, and sent Vasant a 17–page report that date.

Several weeks later Domsch received a letter from James W. LeCompte II, a Cassville lawyer, stating Vasant had contacted him about the study. The letter enumerated sundry complaints and requested an itemized statement of plaintiff's services.

In response Domsch sent Vasant an itemized statement for services in the amount of $7,500, together with expenses totaling $458.41. The statement was dated April 28, 1989.

Vasant paid nothing.

On July 18, 1989, plaintiff filed a petition in the Circuit Court of Barry County. The petition named as defendants: "VASANT B. PATEL & RINA PATEL D/B/A TOWN HOUSE MOTEL." It averred:

"1. That Defendants at the time of the facts alleged hereafter were doing business in Cassville, Barry County, as Town House Motel ...; that Defendants are residents of Barry County, Missouri.

2. The Plaintiff provided to Defendants certain services, an economic feasibility study of the Town House Motel ... and ... after deductions of all credits Defendants presently owe Plaintiff $7,958.41, plus interest at a rate of 1½% per month on unpaid balance.

3. That the prices charged for said services are, and were at the time when said services were provided to Defendants, reasonable and proper, and Defendants promised and agreed to pay the same; that Plaintiff has made demands for payment, but Defendants have failed and refused to pay the same.

4. That Plaintiff first demanded payment from Defendants on April 28, 1989.

WHEREFORE, Plaintiff prays judgment against Defendants for $7,958.41, plus interest from date of judgment at the rate provided by statute, plus reasonable attorney's fees, plus cost, and for all other just and proper relief."

A court clerk issued summons to "Vasant B. and Rina Patel." The docket sheet indicates one Ken Herrington was appointed as "Process Server."

The record contains an affidavit by Herrington regarding service on Rina Patel. The affidavit is a printed form upon which certain handwriting has been placed. The handwriting is difficult to read. We set forth below the pertinent paragraph of the affidavit. The handwriting—as best we can decipher it—is shown in italics:

"By leaving copy of the Summons and Petition at (his) (her) dwelling place or usual place of abode located at *Town House Motel with Kanchan Patel Cassville Mo* (address) with _____ (name of person copies were left with), a person of (his) (her) family over the age of 15 years on *August 1, 1989*."

The record also contains an affidavit by Herrington regarding service on Vasant. The affidavit, as best we can decipher the handwriting, shows service on Vasant August 1, 1989, by leaving a copy of the summons and petition at his dwelling place or usual place of abode, the Town House Motel, with Kanchan Patel, a person of his family over the age of 15 years.

The next significant event was the filing of a document styled "Separate Answer of Rina Patel." It was signed by lawyer LeCompte. The answer admitted (a) Rina is a resident of Barry County, and (b) the allegations of paragraph 4 of plaintiff's petition. The answer denied each and every other allegation of the petition.

A document styled "Separate Answer of Vasant Patel," also signed by lawyer LeCompte, was filed simultaneously with Rina's answer. Vasant's answer admitted (a) Vasant was doing business in Cassville as Town House Motel, (b) Vasant is a resident of Barry County, and (c) the allegations of paragraph 4 of plaintiff's petition. The answer denied each and every other allegation of the petition.

The suit went to trial—by jury—March 16, 1990. Immediately prior to trial plaintiff was granted leave to file a first amended petition. That document purported to incorporate the allegations of the original petition by reference and added averments that the agreement for the study was made January 23, 1989, confirmed by letter January 27, 1989, and never modified.

Again lawyer LeCompte signed and filed separate answers on behalf of Rina Patel and Vasant. This time each answer was identical and denied each and every allegation of the amended petition.

Vasant appeared in person at trial, accompanied by lawyer LeCompte. Rina Patel did not attend the trial.

Plaintiff called two witnesses, the first of whom was Vasant. His testimony included this:

"Q. ... Mr. Patel, are you the owner/operator of the Town House Motel?

A. Me and my wife.

Q. You and your wife own and operate it?

A. Yeah.

Q. You don't have any other partners or anything?

A. No."

Vasant acknowledged receiving and reading the letter of January 27, 1989, from Domsch confirming that the study would be made. Vasant conceded the letter contained this provision: "If you should decide to discontinue the engagement at any point, you may do so by notifying us in writing and paying all fees and expenses incurred to date." Vasant admitted he never wrote plaintiff a letter to discontinue the study.

Plaintiff presented Domsch as its other witness. He narrated the epic from beginning to end, including the revelation that plaintiff had incurred some $5,100 in lawyers' fees. Domsch's testimony included this:

"Q. ... did your contacts with the Town House Motel and your discussions, weer [sic] they just with Mr. Vasant Patel in your discussions concerning this economic feasibility study?

A. I believe he introduced me to his wife. But we were the primary people discussing it, yes, sir.

Q. His wife really didn't get involved in the discussions between you and he?

A. I can't remember that she did, sir."

The defense presented two witnesses, Vasant and John Walker Hendricks, Jr. The latter's testimony is immaterial to any issue in this appeal.

Vasant's testimony, in substance, was that while Domsch was in Cassville in February, 1989, Domsch told him the expansion was not feasible. Vasant avowed he thereupon instructed Domsch to "drop" the study.

The jury's verdict, as read into the record by the trial court, was:

"On the claim of Plaintiff, Lawrence–Leiter & Company against Defendants, Vasant B. Patel and Rina Patel, d/b/a Town House Motel, we, the undersigned jurors, find in favor of the Plaintiff, Lawrence–Leiter & Company. We, the undersigned jurors assess the damages of Plaintiff, Lawrence–Leiter as follows: for damages $14,388.14." [2]

On March 27, 1990, 11 days after trial, plaintiff filed a "Motion to Amend Pleadings." The motion sought leave to amend per Rule 55.33(b) [3] "in order to conform to the evidence which was set forth at trial." The motion averred:

---

**2.** This apparently comprises the $7,958.41 consulting fee and expenses, $5,100 attorney fees, and $1,329.73 interest.

**3.** Rule references are to Missouri Rules of Civil Procedure (1990).

"1. That Defendant Vasant B. Patel testified that his wife's name is Kanchan Patel.[4]

2. That all pleadings prior to trial entered by Defendant indicated Mrs. Patel's first name to be Rina.

3. That the evidence put forth during the ... trial included that Mr. and Mrs. Patel were the sole owners and operators of the Town House Motel. Mr. Patel further testified that all real and personal property constituting the Town House Motel was owned by he and his wife.

4. That it is undisputable that the parties, by both expressed and implied consent, tried the issue of Mrs. Patel's liability in this matter, and that the jury entered a verdict reflecting the same.

WHEREFORE, Plaintiff ... prays this Court ... to ... amend all the pleadings in this matter to reflect that Mrs. Patel's true legal name is Kanchan Patel. Plaintiff further requests that the Court, when rendering its judgment order, designate Defendant Vasant B. Patel's wife, as Kanchan Patel."

The trial court conducted a hearing on the motion the day it was filed. Evidently the hearing was not recorded, as it is not contained in the transcript. The trial court made a docket entry stating, in pertinent part: "Court sustains the Motion to Amend Pleadings ... to reflect name of defendant Rina Patel to read Kanchan Patel."

That same day the trial court signed a "Judgment Upon A Verdict for Plaintiff" identifying the defendants as: "VASANT B. PATEL & KANCHAN PATEL D/B/A TOWN HOUSE MOTEL." The judgment recited that on the claim of plaintiff "against Defendants Vasant B. Patel and Kanchan Patel, d/b/a/ Town House Motel," the jury returned a verdict in favor of plaintiff for $14,388.14. The judgment awarded plaintiff that sum, plus costs.

On March 29, 1990, Kanchan Patel ("Kanchan"), through lawyer David P. Vandagriff, filed a "Motion to Set Aside Amended Judgment and Amended Pleadings." The motion averred Kanchan had learned the trial court had amended the

pleadings and judgment to include Kanchan as a defendant. The motion added: "Movant has never been served with process in this matter and this court has no personal jurisdiction whatsoever over Movant and has no authority to enter any judgment against Movant in this or any other matter absent personal jurisdiction."

Attached to the motion was an affidavit of Kanchan declaring, among other things, that she was never served with process in the case, that she had not retained lawyer LeCompte or any other attorney to represent her in the case prior to retaining lawyer Vandagriff to prepare and file the motion to set aside the judgment, and that she never authorized lawyer LeCompte to make any agreement, enter into any stipulation, or make any representation on her behalf in the case.

The following day, March 30, 1990, lawyer LeCompte filed a "Motion for Judgment Notwithstanding the Verdict Motion for New Trail" [sic]. This motion showed the names of the defendants as: "VASANT B. PATEL AND RINA PATEL, D/B/A TOWNHOUSE MOTEL." The motion prayed the trial court to set aside the verdict and judgment "and to enter judgment in favor of the defendants in accordance with his motions" for directed verdict, or in the alternative to "grant defendants a new trial." One of the grounds set forth in the motion was that "the Court erred in refusing defendants' motions for directed verdict for any defendant other than Vasant Patel as there was no credible evidence presented by plaintiff except as to defendant Vasant Patel."

With matters in this posture the trial court conducted an evidentiary hearing June 13, 1990. Plaintiff appeared by the lawyer who had represented it since the beginning; Kanchan appeared in person and with lawyer Vandagriff; Vasant appeared in person; lawyer LeCompte appeared.

Kanchan testified in support of her motion of March 29, 1990. Her testimony included this:

4. We have scrutinized the transcript and have found no such testimony by Vasant at trial.

"Q. Mrs. Patel, are you married?

A. Yes, I am.

Q. And what is your husband's name?

A. Vasant Patel.

Q. And do you have a daughter?

A. Yes, I do.

Q. And what is your daughter's name?

A. Rina Patel.

. . . .

Q. Mrs. Patel, are you ever known as Rina Patel?

A. No, never did.

. . . .

Q. Mrs. Patel, did you yourself ever hire Jim LeCompte to represent you in the lawsuit brought by Lawrence–Leiter & Company?

A. No, I didn't.

Q. Ms. Patel, were you yourself ever served with papers for you in the Lawrence–Leiter & Company lawsuit?

A. No, never.

Q. Did you appear at the trial of this case as a party to the lawsuit?

A. No.

. . . .

Q. . . . How many children do you have?

A. Three.

. . . .

Q. All right. And how old is Rina?

A. Eight years old.

. . . .

Q. . . . How long have you and your husband owned the Town House Motel out here?

A. For about seven years.

. . . .

Q. Are you the only two owners?

A. Yes.

. . . .

Q. . . . Did you know your husband had to come to court one day for a lawsuit back in March—I mean—I believe that was March 16?

A. No.

Q. You didn't even know he came to court that day?

A. No.

Q. Okay. So you had no idea that there was a lawsuit going on at all?

A. No.

. . . .

Q. Mrs. Patel, do you remember a man in a uniform coming and giving you some papers?

A. Yeah, but—He did, but I didn't know who he was.

Q. You didn't know he was Ken Harrington [sic]?

A. No.

Q. But you do remember a man in a uniform giving you some papers?

A. Yes, I do.

Q. And what did you do with those papers after you got them?

A. I gave them to my husband.

. . . .

Q. All right. Did you read those papers?

A. No."

Plaintiff called lawyer LeCompte as a witness. Highlights of his testimony were:

"Q. At the time you filed the first answer on behalf of Rina Patel, who did you think it was?

A. I assumed it was the co-owner of the Town House Motel.

Q. All right. Did you ever have any face to face contact with a Rina Patel?

A. No.

Q. Then why did you file an answer on behalf of someone if you never met them?

A. Good question. ·

. . . .

Q. Did you think it was Mr. Patel's wife?

A. I thought it was a co-owner, and I assumed. I didn't—I had no—I had no knowledge because she had never been in the office. All of my dealings had been with Vasant Patel.

Q. But you assumed it was his wife, co-owner?

A. I assumed it was the co-owner, yes.

. . . .

Q. Did you think Rina Patel was a minor?

....

[A.] If I thought she was a minor, I would have filed for (inaudible).

....

Q. At the time of the trial when we sat here for the day and tried the jury trial, did you feel it was your job to represent Mr. Patel and his wife?

A. I thought it was my job to represent the interest of the named Defendant in the case.

....

Q. ... Mr. LeCompte, did Kanchan Patel, the woman sitting in the courtroom ever come into your office or otherwise speak with you about this matter prior to the trial?

A. No.

Q. Did she ever retain you as her attorney?

A. My—My only contact in this—in regard to this action was with Vasant Patel."

Plaintiff also called Vasant as a witness. The portions of his testimony pertinent to the issues before us are:

"Q. Do you have a lawyer at this time?

A. No, I don't.

Q. Is Mr. LeCompte not your lawyer at this time?

A. No, he's not.

....

Q. ... When was the first time that you got notice that there was a lawsuit instituted in the name of Lawrence–Leiter vs. Vasant Patel and Rina Patel?

A. When I received the papers?

Q. Okay. And did you read the papers?

A. Yes, I did.

....

Q. During the year of 1989, did you ever tell your wife that you were being sued by Lawrence–Leiter?

A. No, I didn't talk to her about anything.

Q. Did you tell your wife that you were going to Court on [March] 16 for a jury trial?

A. No. I said I was going out.

....

Q. All right. You hired Jim Le-Compte to be your lawyer to defend you?

A. Yes. Defend Vasant Patel.

....

Q. All right. Who was going to defend Rina?

A. I assumed that was my paper. So I just took my paper and got my own lawyer. I don't know who was representing Rina Patel.

Q. All right. So as far as you're concerned, you thought that Mr. LeCompte was just representing you and you alone?

A. That's correct."

At the conclusion of the testimony the trial court denied Kanchan's motion of March 29, 1990.

The trial court then took up the post-trial motion filed by lawyer LeCompte March 30, 1990. Despite Vasant's testimony that LeCompte no longer represented him, and despite the fact that the trial court had substituted Kanchan Patel for Rina Patel as a judgment debtor, LeCompte presented argument in support of the motion. The trial court denied it.

Kanchan filed a timely notice of appeal. Vasant did not appeal.

The first of Kanchan's three points relied on reads:

"The Trial Court erred in granting the motion of Lawrence–Leiter to amend the pleadings and judgment to add Kanchan Patel as a defendant and in failing to set aside said amended pleadings and judgment upon motion from Kanchan Patel in that the Court had no jurisdiction over Kanchan Patel because:

A. She had never been named as a Defendant in the lawsuit,

B. Never been served with process in her own name or a name which she might have reason to believe was her own and

C. Never had the opportunity to appear at the trial or be represented by counsel."

 The general principles applicable to the above point are found in *State ex rel. Ferrocarriles Nacionales de Mexico v. Rutledge*, 331 Mo. 1015, 56 S.W.2d 28 (1932). Unless waived by a general appearance, or otherwise, process is necessary in order for a court to acquire jurisdiction. Due process of law requires that service of process shall always be made except when it may be, and is, waived. Only by appearance, or by service of process, can a court obtain jurisdiction to adjudicate upon the rights of a defendant in the action brought. Absent a general appearance, or waiver of process, by the defendant, there must be service of process on defendant in some mode authorized by law or the court cannot proceed. The service of such process is always a prerequisite to jurisdiction over either the person or property of a defendant. 56 S.W.2d at 37. *Accord: Kerr v. Kerr*, 519 S.W.2d 303, 305[1] (Mo.App. 1975).

██ Kanchan did not waive service of process, nor did she appear in the case until two days after the trial court purported to enter judgment against her. Consequently, the trial court had no jurisdiction to enter judgment against Kanchan unless the delivery of the papers by process server Herrington on August 1, 1989, constituted service of process on her in some mode authorized by law. *Rutledge*, 56 S.W.2d at 37.

Plaintiff cites *Aman Collection Service, Inc. v. Burgess*, 612 S.W.2d 405, 408[3] (Mo.App.1981), for the proposition that if a party defendant is personally served with process, even though in the wrong name, he is obligated to appear and call attention to the defect; if he fails to do so and allows judgment to go against him by default, the misnomer is waived. While that is undeniably correct as an abstract statement of law, it must be considered in the factual context of that case. There a wheat growers association made a contract with "Robert V. Burgess, Dako Products Company." The association later sued "Dako Products Company" in a South Dakota court. Summons was served in Missouri by leaving it "at a business office of the within named Corporation Dako Products Co., with Bob Burgess." A default judgment was entered in the South Dakota court against "Dako Products Company." When steps were taken to register the judgment in Missouri against "Robert V. Burgess d/b/a Dako Products Company" Burgess denied he was a defendant in the South Dakota suit and denied he was served in that suit. The trial court found Burgess "was doing business and is the same as Dako Products Company" and was personally liable on the South Dakota judgment. The Western District of this Court affirmed, holding that the trial court correctly found Dako Products Company was merely a trade name under which Burgess operated and that they were one and the same. *Id.* at 408–09[5].

The difference between *Aman* and the instant case is obvious. In *Aman* the transactions giving rise to the suit were between the wheat growers association and Burgess. The petition delivered to Burgess was based on incidents in which he had participated. It did not pertain to events in which he was not involved.

In the instant case Domsch conceded Vasant's wife—whom he did not identify by name—"didn't get involved in the discussions" between him and Vasant. All Domsch recalled was, "I believe he introduced me to his wife." There was no evidence that Domsch said anything to the wife about his affiliation with plaintiff or the feasibility study. This is not a case where plaintiff dealt with Vasant's wife and billed her for its services. The itemized statement of April 28, 1989, was addressed to: "Mr. V. Patel—Town House Motel."

*Moon v. Tower Grove Bank & Trust Co.*, 658 S.W.2d 57 (Mo.App.1983), also cited by plaintiff, bears no resemblance to the instant case. In *Moon* neither defendant was ever handed a summons. Service was initially attempted by leaving summons at the defendants' residence with a family member. That aspect of *Moon* would be

germane only if there were an issue about the validity of service on Vasant or Rina. The second effort at service in *Moon* was by sending the defendants a postcard. *Moon* supplies no precedent applicable to the fiasco here.

The final case relied on by plaintiff is *Parry v. Woodson*, 33 Mo. 347 (1863). There the holder of a note sued the maker, naming him as Benjamin H. Woodson. Summons was personally served on the maker under that name. The holder subsequently amended his petition with leave of court by substituting the forename Branham for Benjamin. Default judgment was entered for the holder. The defendant then moved the trial court to set the judgment aside. The trial court refused. The Supreme Court of Missouri affirmed. *Parry* is obviously unlike the instant case in that the person on whom summons was served there was the person who had made the note. Here, as we have seen, all discussions about the feasibility study were between Domsch and Vasant. Plaintiff transacted no business with Vasant's wife.

Why plaintiff took the case to trial without naming Kanchan a defendant is impossible to fathom. During argument to the trial court at the post-trial hearing June 13, 1990, plaintiff's lawyer stated:

"Depositions were taken of Mr. Patel where the question was asked, "What is your wife's name?" The response was 'Kanchan.'"

The only reason offered the trial court by plaintiff's lawyer for failing to name Kanchan a defendant was that he "relied upon responses by Defendants' counsel as to who the identity of—was of this extra Defendant." That excuse wilts under scrutiny, as the record is bare of any statement by lawyer LeCompte, either verbally or in the pleadings he filed, that Rina Patel is Vasant's wife.

In deciding whether the instant case is simply one where the right person was sued and served under the wrong name it is significant that the name Rina Patel on the petition and summons is the correct name of a living person. That was not true

in *Aman* and *Parry*. In *Aman* there was no person or corporation named Dako Products Company. That name was merely one under which Burgess—the person to whom the suit papers were delivered—transacted business. In *Parry* there was no indication there was anyone named Benjamin Woodson. In both *Aman* and *Parry* the person to whom the suit papers were delivered was the person whose conduct was the basis of the suit. In short, the right person was sued and served, albeit under a wrong name.

Such circumstances do not exist here. Kanchan had no role in the events that precipitated this litigation. Plaintiff's claim is based on Vasant's conduct, not on anything Kanchan did. Plaintiff seeks to fasten the judgment on Kanchan solely because she is Vasant's wife and co-owner of the motel.

Plaintiff asserts the transcript "reeks of a premeditated sandbagging" by Kanchan and Vasant to mislead plaintiff, the trial court, the jury and lawyer LeCompte.

We need not comment on Vasant's behavior, as we fail to see how it has any bearing on whether there was valid service of process on Kanchan. We remind plaintiff, however, that Vasant truthfully identified Kanchan as his wife during his deposition.

We likewise say nothing about lawyer LeCompte's performance, as it is clear Kanchan never authorized him to do anything in her behalf. Whatever LeCompte's reasons were for handling the case as he did, his doings are not chargeable to Kanchan.

Plaintiff insists it is unbelievable for Kanchan to maintain she had no notice of the suit. That, however, begs the question. Kanchan could have known of the suit without believing plaintiff meant to make her a defendant. The appeal does not hinge on whether Kanchan was aware of the suit, but on whether, in the bizarre circumstances here, this Court should hold there was personal service of summons on

her.[5]

Plaintiff, as we grasp its argument, asserts it was Kanchan's duty to notify plaintiff and the trial court of the "misnomer" in the process left at the motel August 1, 1989. This would necessarily impose a duty on Kanchan to deduce that the people plaintiff meant to sue were Vasant and her.

In deciding whether the law imposes that obligation on Kanchan we bear in mind that her name appears nowhere in the suit papers and the petition contains no allegation that the operators of the motel are husband and wife. Additionally, neither Domsch nor any other representative of plaintiff had any dealings with Kanchan and there was no evidence the name "Lawrence–Leiter and Company" meant anything to her.[6] Finally, Vasant revealed at the post-trial hearing June 13, 1990, that his sister-in-law worked at the motel at the time suit was filed. Consequently, Kanchan was not the only person besides Vasant and Rina who could be found for service there.

Plaintiff's position requires more of Kanchan than it does of plaintiff. As reported earlier, Vasant disclosed in his pretrial deposition that his wife's name is Kanchan, yet plaintiff, in its first amended petition filed the morning of trial, persisted in naming the defendants as Vasant and Rina.

We acknowledge it is arguable that Kanchan should have realized it was unusual for her eight-year-old daughter to be named a defendant in a lawsuit. That, however, does not mean Kanchan should also have figured out that plaintiff wanted to make her (Kanchan) a defendant, particularly where she had transacted no business with plaintiff. Kanchan could have reasonably assumed the papers delivered

by Herrington did not affect her, as her name was not on them and she had done nothing on which a suit could be based.

■ We decline to hold Kanchan was required by law to infer from the suit papers that plaintiff intended her to be a defendant. It was not Kanchan's obligation to read the mind of plaintiff's lawyer, deduce he had made a mistake, figure out who he must have intended to sue, and march to court as a volunteer defendant.

■ We hold there was no service of process on Kanchan, hence the trial court had no jurisdiction to enter judgment against her. The trial court's action of March 27, 1990, was not simply an amendment of pleadings to conform to the evidence per Rule 55.33(b). That is permissible only where unpled issues are tried by express or implied consent of the parties. As Kanchan was not a party when the case was tried, she did not consent to anything that occurred at trial.

It follows that the judgment must be reversed as to Kanchan. Having decided that, we do not reach Kanchan's second and third points (or the question of whether they were preserved in the trial court for review here).

The reversal as to Kanchan does not affect the judgment as to Vasant. The judgment became final as to him when he failed to appeal within the time allowed. *People's Bank of Glasgow v. Yager*, 329 Mo. 767, 46 S.W.2d 585, 587[3] (1932).

These determinations would ordinarily conclude our task. However, in the interest of leaving no loose ends we point out that although there was a purported verdict against Rina Patel the trial court did not enter judgment against her. It is inferable the trial court recognized there was no

---

5. There are cases such as *Blackburn v. Holmes*, 317 S.W.2d 408 (Mo.1958), which involve service on a defendant by leaving a copy of the summons and petition at his dwelling house or usual place of abode with some person of his family over age fifteen. Such service is characterized as "abode service." *Id.* at 413[2]. Kanchan's first point does not present an abode service question, as there was no purported abode service on her. Process server Herrington endeavored to make abode service on *Vasant* and *Rina* by leaving the papers with Kan-

chan. Cases addressing abode service are inapplicable.

6. *Plaintiff asserts Vasant discussed the feasibility study with Kanchan while plaintiff was performing the study. However, the transcript reference cited by plaintiff in support of this proclamation does not establish that Kanchan knew the study was being made by a firm named Lawrence–Leiter and Company.*

evidence to support a judgment against Rina, a proposition advanced—somewhat obliquely—in the post-trial motion filed by lawyer LeCompte. Irrespective of that, however, any judgment against Rina based on the verdict of March 16, 1990, would be void because she is a minor and no guardian ad litem was ever appointed for her. *Quincy v. Quincy,* 430 S.W.2d 638, 641[3] (Mo.App.1968).

The judgment is reversed as to Kanchan Patel. It remains undisturbed as to defendant Vasant B. Patel.

PREWITT, J., concurs.

MAUS, P.J., dissents and files dissenting opinion.

MAUS, Judge, dissenting.

I dissent. This is not a case where a defendant was not served with process. Nor is it a case where the jurisdiction of the court depends upon constructive service or abode service for a person not correctly named as a defendant who is not actually served. Cf. *Blackburn v. Holmes,* 317 S.W.2d 408 (Mo.1958). Kanchan Patel was actually served with a summons with a copy of the petition attached. The caption of the Petition in this case named the defendants as: "VASANT B. PATEL & RINA PATEL *D/B/A TOWN HOUSE MOTEL*". (Emphasis added.) Each of the summons bore the same caption. The first paragraph of the petition alleged "That Defendants at the time of the facts alleged hereafter were doing business in Cassville, Barry County, as...." Two copies of the summons, with the petition attached, were handed to Kanchan Patel.

It is apparent from the summons and petition the person sued as a co-defendant with Vasant B. Patel was a party doing business as "Town House Motel". A mistake in the name of that person did not insulate Kanchan Patel, who was personally served, from the action.

"A mistake in the defendant's name—a misnomer—is not necessarily a fatal defect. Generally, it is considered to be a defect which may be amended, and it may even be disregarded where it is fair-ly certain that no prejudice has resulted to the defendant. Misnomer mistakes need not be treated as grounds for dismissal if intelligent persons can understand what was intended, or if the party intended to be served knows, or has good reason to know, that he has been proceeded against, or where an imprecisely designated defendant was fully apprised of the fact and nature of the action against it. An individual defendant may be sued and validly served with process that describes that individual as a person 'doing business' as a particular named company...." 62B Am.Jur.2d, Process, § 84.

That principle is generally applied when the defendant named is a non-existent person or is not known to the person served. However, the fact Rina Patel was a person known to Kanchan Patel does not cause that principle to be inapplicable. Kanchan Patel was well aware her eight-year-old daughter did not do business as a co-owner of Town House Motel. The use of her daughter's name unquestionably alerted Kanchan Patel a mistake had been made and that it was she who had been served as a co-owner.

The effect of that mistake has been succinctly stated.

"As a general rule, an objection that the defendant was sued by the wrong name is matter of abatement only, and will not void a judgment against him if he has been actually served. Due process of law does not impose an unattainable standard of accuracy. If a defendant within the jurisdiction is served personally with process in which his name is misspelled, he cannot safely ignore it on account of the misnomer. Accordingly, if the defendant has been actually served with the summons in an action, a default judgment against him is valid although in the summons he is misnamed. If the defendant prefers not to appear in the action and enter a plea of abatement, he will be deemed to have waived the error, and such judgment is held to be valid until regularly vacated or set aside or until the record has been amended to

correct the error." 62B Am.Jur.2d, Process, § 85.

These principles are embodied in the statement of the general rule adopted in Missouri authorizing the action of the trial court in ordering the amendment of the judgment to substitute the name of Kanchan Patel. That general rule was stated at an early date.

"A name is a means of identity; but the change of the name or the application of a wrong name does not change the thing identified. It is not the name that is sued but the person to whom it is applied. Process served on a man by a wrong name is as really served on him as if it had been served on him by his right name, and if in such case he fail to appear, or appearing fail to object that he is sued by the wrong name, and judgment be rendered against him by such name, he is as much bound by the judgment as if it had been rendered against him by his right name. The use of the right name is every way preferable, since without it as a means of identification the evidence of the identity of the person sued may in process of time become lost; and hence the propriety of the amendment in this case; but *so long as the defendant can be identified as the one against whom the judgment was rendered,* he is as much bound by the judgment, and those claiming under the judgment are as much entitled to its benefits, to all intents and purposes, as if the defendant had been sued by his right name." *Parry v. Woodson,* 33 Mo. 347, 348 (1863). (Emphasis added.)

That rule has been consistently recognized. *Blackburn v. Holmes,* supra; *Green v. Strother,* 201 Mo.App. 418, 212 S.W. 399 (1919); *Harper v. Hudgings,* 211 S.W. 63 (Mo.1919); *Slavens v. William C. Haas Co., Inc.,* 563 S.W.2d 157 (Mo.App.1978). An incisive discussion of an application of the basic rule is found in *Green,* supra, in which a judgment against a defendant named as "John Skinner" was held to be in fact a judgment against the estate of "William Floyd Skinner, deceased."

An applicable subsidiary rule is the following.

"These rules apply even though the proceedings to enforce the judgment occur in a court other than the one of rendition; and this is so also even though proof of the identity of the party defendant requires evidence extrinsic from the record in the original proceeding." *Aman Collection Service, Inc. v. Burgess,* 612 S.W.2d 405, 408 (Mo.App.1981).

The majority opinion is based upon the proposition that there was no evidence from which the trial court could find the plaintiff sued the right party, Kanchan Patel, by the wrong name, Rina Patel. I disagree. The trial court was entitled to and did disbelieve the professions of ignorance of Vasant B. Patel and Kanchan Patel, and disclaimer of representation proffered by lawyer LeCompte. The trial court could reasonably find such incredulous professions of ignorance and disclaimer of representation to be an acknowledgment by all concerned they were well aware the "co-owner" sued was Kanchan Patel. The trial court did so find, in its oral explanation to the parties, why it determined the trial court had been "sandbagged." The awareness of the parties is reflected in the testimony of LeCompte concerning whom he thought he represented in filing a pleading under the name of and on behalf of Rina Patel. He said, "I assumed it *was the co-owner, yes.*" (Emphasis added.) That knowledge was confirmed when lawyer LeCompte filed a motion for judgment notwithstanding the verdict, still on behalf of the defendants, in which he alleged "the court erred in refusing defendants' motions for directed verdict for *any defendant* other than Vasant Patel". (Emphasis added.) The trial court could reasonably find that co-owner of the business, Kanchan Patel, was identified as the co-defendant sued "d/b/a Town House Motel", and that Vasant B. Patel and Kanchan Patel and LeCompte were not misled, but misled the trial court.

Rule 75.01, in part, provides: "The trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties

an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time." In this action, the amended judgment was entered in that manner and within that time.

Moreover, even when a judgment is final, § 511.260 is applicable. That section, in part, provides: "[J]udgment thereon shall not be ... reversed, impaired or in any way affected by reason of the following imperfections, omissions, defects, matters or things, or any of them, namely: ... (10) For any mistake in the name of any party or person, or in any sum of money, or in any description of any property, or in reciting or stating any day, month or year, when the correct name, sum or description shall have been once rightly alleged in any of the pleadings or proceedings." Section 511.270 provides: "The omissions, imperfections, defects and variances in section 511.260 enumerated, and all others of a like nature, not being against the right and justice of the matter of the suit, and not altering the issues between the parties on the trial, shall be supplied and amended by the court where the judgment shall be given, or by the court into which such judgment shall be removed by writ of error or by appeal." Those sections have been held to authorize an amendment of a misnomer in proceedings comparable to this case. *Green v. Strother*, supra. Also see *Slavens v. William C. Haas Co., Inc.*, supra; *Orona v. Consolidated Cab Company*, 373 S.W.2d 486 (Mo.App.1963); *Harper v. Hudgings*, supra; *Aman Collection Service, Inc. v. Burgess*, supra; *Walker v. Wabash R. Co.*, 193 Mo. 453, 92 S.W. 83 (1906).

Under the case law, Rule 75.01 and §§ 511.260(10), the amendment granted by the trial court was proper. I have examined the other two points purportedly raised by Kanchan Patel. They have no merit and I would affirm the judgment of the trial court.